J. Richard RYAN, on behalf of himself and others similarly situated, and in the right of VHA Enterprises, Inc., Plaintiff,

v.

AETNA LIFE INSURANCE CO., Voluntary Hospitals of America Inc., Alan J. Chamison, Jack M. Cook, Robert L. Harris, Emmett R. Johnson, Robert W. O'Leary, Eugene L. Step, James K. Elrod, Robert V. Hansberger, Edmund F. Kelly, Charles C. Lindstrom, E. George Middleton, Jr., Michael D. Stephens, Charles T. Bell, J. Robert Buchanan, Robert M. Harrell, Samuel T. Wallace, Sheldon S. King, C. Thomas Smith, Gordon M. Sprenger, James F. Vickery, and VHA Enterprises, Inc., Defendants.

No. 90 Civ. 2656 (PKL).

United States District Court, S.D. New York.

May 31, 1991.

Davis, Markel & Edwards, New York City (John A. Redmon, of counsel), for plaintiff.

Cahill Gordon & Reindel, New York City (Laurence A. Silverman, of counsel), Gardner, Carton & Douglas, Chicago, Ill., for VHA Enterprises, Inc., and all individual defendants except Edmund F. Kelly and Charles T. Bell.

Willkie Farr & Gallagher, New York City (Steven Greiner, of counsel), for Voluntary Hospitals of America, Inc.

Pepper, Hamilton & Scheetz, Philadelphia, Pa. (John G. Harkins, of counsel), Kornstein Veisz & Wexler, New York City, for Aetna Life Ins. Co., Edmund F. Kelly and Charles T. Bell.

## ORDER AND OPINION

LEISURE, District Judge.

This case arises from events surrounding the sale of an asset by defendant VHA Enterprises, Inc. ("Enterprises") to defendant Aetna Life Insurance Co. ("Aetna"). Plaintiff J. Richard Ryan ("Ryan"), a minority shareholder, seeks to bring a derivative suit on behalf of Enterprises, and, simultaneously, a class action against Enterprises and other defendants. Defendants now move the Court for dismissal of plaintiff's complaint on the grounds that: (1) plaintiff cannot simultaneously pursue the derivative and class actions because of a conflict of interest; (2) plaintiff has not adequately pled demand futility; and (3) plaintiff has attempted to assert Counts III through VIII as both derivative and direct claims, in spite of their strictly derivative nature.

## BACKGROUND

Enterprises is a Delaware corporation with its principal executive offices in Irving, Texas. Its shareholders include approximately 569 individuals; 260 not-for-profit hospitals; 22 corporate investors; and defendant Voluntary Hospitals of America ("VHA"). VHA is, in turn, a corporation owned by some 97 not-for-profit hospitals. VHA is the majority shareholder in Enterprises, with 63% of the voting shares. Defendants include Enterprises, individual members of its board of directors, VHA, and Aetna. Plaintiff is a minority shareholder of Enterprises. While no motion for class certification has yet been filed, plaintiff seeks to represent a class of minority shareholders consisting of the individual and corporate shareholders of Enterprises.[1]

This action arises out of a transaction in which Enterprises' 50% share of PARTNERS National Health Plans ("PARTNERS") was redeemed by Aetna, its former 50% partner. According to defendants, "PARTNERS acts as a manager for and has ownership interests in Health Maintenance Organizations and Preferred Provider Organizations and offers integrated health care delivery and benefit plans built on networks of hospitals at the core of which are VHA hospitals." Memorandum in Support of Defendants' Motion to Dismiss the Amended Complaint ("Def. Mem.") at 4. Prior to the sale of the PARTNERS' interest in May of 1990, PARTNERS constituted one of Enterprises' major assets.

On April 20, 1990, plaintiff commenced this action, alleging, derivatively, on behalf

---

1. The proposed class consists of these shareholders as of June 7, 1990, and accounts for approximately 27% of Enterprises' shareholders. Since June 7, 1990, a portion of the proposed class has sold its shares. Thus, the proposed class would encompass both present and former shareholders.

of Enterprises, and directly, on behalf of himself and the proposed class of minority shareholders, that VHA, Aetna and others violated federal proxy laws and breached their fiduciary duties to Enterprises and the minority stockholders. Plaintiff also moved for a preliminary injunction enjoining Aetna's intended acquisition of Enterprises' interest in PARTNERS. This Court denied the injunction in an order and opinion dated May 1, 1990.

At a shareholders' meeting on May 1, 1990, the shareholders of Enterprises approved the sale to Aetna. The sale closed on May 21, 1990. On June 7, 1990, plaintiff filed an amended complaint (the "Amended Complaint") containing both class and derivative claims. Plaintiff alleges that the sale of PARTNERS was imposed upon Enterprises and its minority shareholders by VHA, in conspiracy with, and aided and abetted by, Enterprises' board of directors and Aetna. Plaintiff further alleges that Aetna obtained PARTNERS for inadequate consideration, and that VHA was rewarded for its role by valuable side benefits from the sale.

Plaintiff and his counsel seek to represent both the proposed class and Enterprises. Plaintiff concededly has made no demand for action upon Enterprises' board of directors.

Defendants now move to dismiss the Amended Complaint on the following grounds: (1) that plaintiff is not an adequate representative for both the class and derivative claims, pursuant to Federal Rules of Civil Procedure 23(a)(4) and 23.1; (2) that plaintiff has failed to plead demand futility with requisite particularity, pursuant to Rule 23.1; and (3) that the claims pleaded as direct in Counts III through VIII fail to state a claim, pursuant to Fed. R.Civ.P. 12(b)(6).

## DISCUSSION

### I. Conflict of Interest

■ Federal Rule of Civil Procedure 23(a)(4) requires, as one of the prerequisites to a class action in federal court, that "the representative will fairly and adequately protect the interests of the class." Similarly, Rule 23.1, which governs shareholder's derivative actions, states that "[t]he derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders ... similarly situated in enforcing the right of the corporation." *See also Caan v. Kane–Miller Corp.*, No. 71 Civ. 878 (S.D.N.Y. Dec. 12, 1974) (similar considerations apply under Rules 23 and 23.1). Thus, while plaintiff's motion to certify the class is not yet before the Court, his derivative action cannot proceed if a conflict of interest disables him from fairly and adequately representing the other shareholders of Enterprises.

Defendants contend that the courts of this District have formulated a *per se* rule that prohibits a plaintiff from pursuing simultaneous direct and derivative actions under the circumstances of the instant case. Plaintiffs argue that no such *per se* rule exists, and that the weight of authority, largely from other Circuits, is against a *per se* rule.

Both sides agree, however, that the existence of an actual conflict disqualifies a plaintiff from acting as representative in these dual capacities. Without determining whether a true *per se* rule exists, this Court concludes, after a review of the case law, that courts in this District have applied a strict standard in scrutinizing simultaneous direct and derivative actions for signs of conflict. *See, e.g., Kamerman v. Steinberg*, 113 F.R.D. 511 (S.D.N.Y.1986) (class certification denied where plaintiffs also brought derivative claims); *Petersen v. Federated Development Co.*, 416 F.Supp. 466, 475 n. 6 (S.D.N.Y.1976) (assumption that plaintiff bringing individual and derivative claims cannot fairly represent shareholders); *Caan, supra* (individual and derivative actions may not be maintained simultaneously); *Ruggiero v. American Bioculture, Inc.*, 56 F.R.D. 93 (S.D.N.Y.1972) (class and derivative actions may not be pursued simultaneously).

In the case at bar, defendants' most compelling argument for a conflict is the incompatibility of the relief sought by plain-

tiff in his dual role. Ryan seeks, as a derivative plaintiff, to recover additional payment for the share of PARTNERS sold to Aetna. Such a recovery will inure to the benefit of, potentially, all shareholders of Enterprises, as well as its bondholders, creditors and employees. As an individual or class representative, he seeks, *inter alia*, damages, including punitive damages, from the corporation and other defendants to the class, and the imposition of a constructive trust on the funds received for the sale of PARTNERS.

Plaintiff contends that any conflict of this type will not be manifest until the remedial stage of this litigation, and that this Court can exercise its "ample powers" at that stage "to prevent any conflict of interest from adversely affecting any represented party." Plain. Mem. at 17. While courts have used their powers to fashion a proper remedy when, for example, class claims were mistakenly brought as derivative claims, *see Perlman v. Feldmann*, 219 F.2d 173 (2d Cir.), *cert. denied*, 349 U.S. 952, 75 S.Ct. 880, 99 L.Ed. 1277 (1955), or have postponed the issue when it was not yet clear whether any actual conflict would arise later in the litigation, *see Bader v. Fleschner*, 463 F.Supp. 976 (S.D.N.Y.1978), this Court finds early intervention to be the more prudent, and, ultimately, the more efficient course. Thus, if a conflict is apparent at this stage, plaintiff must elect a single representative role.

Plaintiff argues that "in both the class and derivative actions, Enterprises is primarily a corporate conduit through which a recovery obtained from other defendants will be channeled," and that Aetna is "fully capable of paying all of the damages sought here." Plain. Mem. at 16–17. The Court finds this to be unconvincing as to the direct claims. Plaintiff assumes not only that Aetna will be found liable, but also that Aetna will be obliged to pay for the allegedly wrongful acts of Enterprises and its directors. This assumption as to who will pay the final reckoning cannot act to cure a conflict implicit in plaintiff's suit against Enterprises.

Plaintiff further contends that "because Enterprises has minimal assets and is on the verge of bankruptcy or liquidation," the derivative action will serve to " 'fill the coffers' of a corporation otherwise lacking assets in order to fund a class recovery." Plain. Mem. at 17–18 (quoting *Kane Assocs. v. Clifford*, 80 F.R.D. 402, 408 (E.D.N.Y.1978)). Plaintiff's reliance on *Kane*, in which the corporation had been completely liquidated, is misplaced in this situation, where the corporation, whether healthy or not, remains in existence and can benefit from a recovery in the derivative action.

As if in further illustration of defendants' argument that plaintiff's "claims are asserted derivatively simply to maximize recovery for plaintiff's small proposed class," Def. Reply at 8, plaintiff suggests that "[t]his Court has the power to fashion a derivative remedy which allows the recovery to go directly to minority shareholders and to by-pass the wrongdoing majority." Plain. Mem. at 11–12. Not only does this suggestion ignore the not-for-profit hospital shareholders that are excluded from the proposed class, but it is questionable whether, under Delaware law, such a recovery is possible. *See In re Tri–Star Pictures, Inc. Litigation*, 1990 Del.Ch. LEXIS 80, 1990 WESTLAW 82734 (Del.Ch. June 14, 1990) ("The only entity that can recover for an injury to [the corporation] is [the corporation] itself.") This argument casts further doubt on Ryan's ability to pursue the derivative claims with fervor equal to that apparent in his arguments on behalf of the class.

The Court also notes that, while all the claims arise out of the same events, proof of certain of the allegations may be inconsistent with other claims. As defendants point out, plaintiff's allegation in Count VII that Aetna tortiously interfered with Enterprises' contractual relationship with VHA is inconsistent with his allegation that Enterprises wrongfully agreed to amend that same contract, to the detriment of the class.

In sum, the Court finds that Ryan is subject to a conflict of interest in pursuing both direct and derivative claims in this

action, which renders him unable "fairly and adequately [to] represent the interests of the shareholders" as required under Fed.R.Civ.P. 23.1. This conflict is also sure to be present on a motion to certify the class under Rule 23. Accordingly, plaintiff's derivative claims are dismissed under Rule 23.1, pending an election by plaintiff to pursue either the direct or derivative claims in this action. Leave to replead is granted.

## II. Demand Futility

While the Court need not reach defendants' remaining arguments in light of the above ruling, for the sake of providing guidance to plaintiff in repleading, the Court will address plaintiff's allegations of demand futility. Defendants claim that plaintiff's derivative action must be dismissed for failure to make a demand upon Enterprises' board of directors or, in the alternative, to plead demand futility adequately as required by Rule 23.1 of the Federal Rules of Civil Procedure.

Rule 23.1 requires a shareholder wishing to bring a derivative action to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority ... and the reasons for the plaintiff's failure to obtain the action or for not making the effort." It is undisputed that Delaware law is controlling on the substantive question of whether demand is excused. *See* Def. Mem. at 5; Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Plain. Mem.") at 20; *see also Kamen v. Kemper Financial Servs., Inc.*, —— U.S. ——, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991); *Burks v. Lasker*, 441 U.S. 471, 478, 99 S.Ct. 1831, 1837, 60 L.Ed.2d 404 (1979).

■■■ Under Delaware law, failure to make a demand upon the board will be excused only if such a demand would be futile. To plead demand futility adequately, a plaintiff must allege with particularity facts creating a reasonable doubt that: "(1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of

business judgment." *Aronson v. Lewis*, 473 A.2d 805, 814 (Del.1984). As the Supreme Court of Delaware has stated:

> [T]he entire question of demand futility is inextricably bound to issues of business judgment ... [The business judgment rule] is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company. Absent an abuse of discretion, that judgment will be respected by the courts. The burden is on the party challenging the decision to ... rebut[ ] the presumption.

*Aronson, supra*, 473 A.2d at 812 (citations omitted).

If the Court "in its sound discretion is satisfied that a plaintiff has alleged facts with particularity which, taken as true, support a reasonable doubt as to either aspect of the *Aronson* analysis, the futility of demand is established and the [C]ourt's inquiry ends." *Pogostin v. Rice*, 480 A.2d 619, 624–25 (Del.1984).

Director Disinterest and Independence

■■■ "As to the first *Aronson* inquiry, the Court reviews the factual allegations of the complaint to determine whether they create a reasonable doubt as to the disinterestedness and independence of the directors at the time the complaint was filed." *Pogostin, supra*, 480 A.2d at 624. In order to raise a reasonable doubt in this respect, plaintiff must allege that the directors expected a personal benefit from the challenged transaction or appeared on both sides of the transaction, showing divided loyalties. *Grobow v. Perot*, 539 A.2d 180, 188 (Del.1988); *Aronson, supra*, 473 A.2d at 812. The Court has reviewed the Amended Complaint and finds no allegations therein that Enterprises directors derived any personal gain from the sale of PARTNERS to Aetna. Plaintiff alleges in Paragraphs 59–61 of the Amended Complaint that VHA received a variety of benefits from the sale, but does not include any allegations that personal benefits accrued to those VHA board members who also sat on Enterprises' board. Any argument for

personal gain must therefore fail. *Cf. Manchester v. Narragansett Capital, Inc.,* 1989 Del.Ch. LEXIS 141, 1989 WL 125190 (Del.Ch. Oct. 18, 1989) (reasonable doubt raised where directors derived personal financial benefits).

■ The question remains whether the Amended Complaint raises reasonable doubt by way of allegations of divided loyalties. Plaintiff argues that particularized allegations of a purported alliance between VHA and Aetna and the presence of VHA and Aetna board members on the Enterprises' board indicate divided loyalties and effectively excuse demand. Plaintiff cites the following allegations: (1) Enterprises rejected Aetna's 1988 offer to purchase Enterprises' interest in PARTNERS, Amended Complaint ¶¶ 45–46; (2) subsequent to that rejection, VHA and Aetna replaced Enterprises directors with persons controlled by VHA and Aetna, *id.* ¶¶ 47–48; (3) VHA and Aetna began selling Enterprises' assets, *id.* ¶¶ 49–53; and (4) Enterprises' board accepted a second, less favorable offer by Aetna for PARTNERS, because the offer included valuable benefits for VHA and allowed Aetna to buy the PARTNERS interest at a low price, *id.* ¶¶ 57–67.

While there is authority for the argument that demand is futile where the directors subject to demand are board members of the party on the opposite side of the disputed transaction, *see, e.g., In re NVF Co. Litigation,* 1989 Del.Ch. LEXIS 167, 1989 WESTLAW 146237 (Del.Ch. Nov. 22, 1989); *Siegman v. Tri–Star Pictures, Inc.,* 1989 Del.Ch. LEXIS 56, 1989 WESTLAW 48746 (Del.Ch. May 30, 1989), plaintiff primarily questions the loyalty of those board members who sit on both Enterprises' and VHA's boards. However, VHA was on the same side of the transaction in question as Enterprises, and plaintiff has cited no modern Delaware cases excusing demand under such circumstances. Aetna, not VHA, was the party on the opposite side of the transaction as the purchaser of PARTNERS, and therefore the analysis must focus on the connection between Enterprises' and Aetna's boards in determining the question of divided loyalties.

According to the Amended Complaint, "[a]t the time of the acts complained of, Enterprises' Board of Directors consisted of all 16 members of VHA's Board of Directors, three designees of Aetna, and one person who, at the time of the acts complained of, was a director of a VHA stockholder organization." Amended Complaint ¶ 7. The Amended Complaint further alleges that a majority of the board members not affiliated with Aetna voted in favor of the transaction: "While Enterprises' three Aetna directors did not vote, all 18 VHA-affiliated directors voted in favor of the transaction." *Id.* ¶ 65. Thus, plaintiff himself alleges that the majority of board members were not affiliated with the Aetna board, and that the Aetna affiliates did not vote. Delaware law holds that demand must be made upon the board if the disputed transaction has been "approved by a majority consisting of the disinterested directors." *Aronson, supra,* 473 A.2d at 812. Plaintiff's allegations establish no divided loyalties of the Enterprises board sufficient to excuse demand under Delaware law.

Duty of Due Care

■ Under the second prong of the *Aronson* test, the Court must look to the allegations of impropriety in the exercise of "both substantive due care (purchase terms), and procedural due care (an informed decision)." *Grobow, supra,* 539 A.2d at 189 (citations omitted). On the issue of substantive due care, Delaware courts focus on whether the transaction represents a fair exchange. In a case involving a disputed repurchase transaction, the Supreme Court of Delaware wrote that the issue is "whether 'what the corporation has received is so inadequate in value that no person of ordinary, sound business judgment would deem it worth that which the corporation has paid.'" *Grobow, supra,* 539 A.2d at 189 (quoting *Saxe v. Brady,* 184 A.2d 602, 610 (Del.Ch.1962)). Plaintiff compares the 1988 and 1989 offers, alleging that the 1989 offer was significantly lower. The Amended Complaint does not,

however, relate this comparison to the issue of fair exchange, nor does it make any particularized allegations demonstrating that the price for PARTNERS was objectively unfair. Accordingly, plaintiff fails to raise a reasonable doubt as to substantive due care.

■ Procedural due care requires Enterprises to have made an informed business decision, subject to the gross negligence standard. "Approval of a transaction by a majority of independent, disinterested directors almost always bolsters a presumption that the business judgment rule attaches to transactions approved by a board of directors that are later attacked on grounds of procedural due care. In such cases, a heavy burden falls on a plaintiff to avoid presuit demand." *Grobow, supra,* 539 A.2d at 190. Plaintiff's allegations include that: (1) both the negotiations and approval of the deal were finalized within a few weeks, Amended Complaint ¶ 63; (2) Enterprises' Executive Committee endorsed the proposal before engaging an investment bank as financial advisor, *id.* ¶ 63; and (3) the investment bank engaged, PaineWebber, Inc., failed to make all necessary investigations, including a range of values for PARTNERS and the higher value that might have been realized by alternate types of transactions, *id.* ¶¶ 64(a)–(p).

"A cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson, supra,* 473 A.2d at 811. Delaware courts have shown a marked deference to directors in their treatment of procedural due care. For instance, the law establishes that the duration of negotiations prior to a disputed transaction is not a decisive factor. In *Grobow,* for example, formal negotiations lasted only three weeks, yet the court found that the board was adequately informed.

Delaware courts also frequently defer to an outside advisor's discretion in determining what information was necessary to an informed decision. *See In re Fort Howard Corp. Shareholders Litigation,* Civ. No. 9991, 1988 WESTLAW 83147 (Del.Ch. Aug. 8, 1988). In the same spirit, the Court in *Levine v. Smith,* Civ. No. 8833, 1989 WESTLAW 150784 (Del.Ch. May 21, 1990) rejected plaintiff's allegations that directors failed to consider certain information, pointing out that "[t]he Board may not have needed further information at that time, because they possessed the information essential to an informed decision."

In the instant action, the complaint establishes that Enterprises' board had the Aetna offer considered by a separate committee, in addition to consulting PaineWebber. Moreover, plaintiff has failed to allege particularized facts, as required by *Aronson,* that support his allegations that the board lacked essential information, or that the issues that were not investigated by PaineWebber were crucial to the board's decision. Thus, the Court concludes that plaintiff has not raised a reasonable doubt as to the adequacy of the process surrounding the negotiation of the sale sufficient to excuse a demand on the board.[2]

The Court therefore finds that plaintiff has failed to demonstrate demand futility. Accordingly, plaintiff's pleading of his derivative claims fails to meet the requirements of Rule 23.1.

### III. Counts III through VIII

The Court will not at this time address the question of whether Counts III through VIII of the Amended Complaint may be brought as both derivative and direct claims. However, on repleading, the Court would advise plaintiff to consider carefully the teaching of Delaware courts on this issue. "A derivative claim is a wrong to an incorporated group as a whole that depletes or destroys corporate assets and, as a consequence, reduces the value of the corporation's stock." *In re Tri–Star, supra,* 1990 Del.Ch. LEXIS 80, 1990 WESTLAW 82734 (citing *Cede & Co. v. Techni-*

---

**2.** By contrast, cases finding a lack of procedural due care have involved extreme circumstances. *See, e.g., Smith v. Van Gorkom,* 488 A.2d 858 (Del.1985) (board met on last minute notice, negotiations lasted only two hours, no documents were presented to board for consideration, and directors relied entirely on fellow board member's short oral presentation).

*color, Inc.*, 542 A.2d 1182, 1188 n. 10 (Del. 1988). To maintain allegations individually as well as derivatively, plaintiff " 'must allege either "an injury separate and distinct from that suffered by other shareholders," ... or a wrong involving a contractual right of a shareholder, such as the right to vote or to assert majority control, which exists independently of any right of the corporation.' " *Id.* (quoting *Moran v. Household Int'l. Inc.*, 490 A.2d 1059, 1070 (Del.Ch.), *aff'd*, 500 A.2d 1346 (Del.1985)) (quoting *Fletcher Cyc. Corp.* § 5921, at 452 (perm. ed. 1984))).

### CONCLUSION

For the reasons set forth above, plaintiff's derivative claims are dismissed. Leave to replead is granted. Plaintiff shall elect whether to pursue his direct or his derivative claims, and shall serve and file a second amended complaint in this action on or before July 19, 1991.

SO ORDERED.