PARKER, Circuit Judge.
James Dunlop-McCullen, pro se, appeals from a judgment of the United States District Court for the Southern District of New York (Peter K. Leisure, Judge) denying him leave to file a verified complaint pursuant to 29 U.S.C. § 501(b). We vacate the judgment and remand to the district court for proceedings consistent with this opinion.
I. BACKGROUND
On January 13, 1997, Dunlop-McCullen sought leave to file verified complaint pursuant to § 501(b) of the Labor-Management Reporting and Disclosure Act (“LMRDA”) of 1959, 29 U.S.C. § 501(b), against Local 1-S, AFL-CIO-CLC (the “Union” or the “Local”) and seven union officials: Joseph Pascarella, President; Margaret Samuels, Executive Vice President; Gail Rogers, Administrator; Gus Selino, Trustee; Charles Diggs, Trustee; William Malysko, Sergeant at Arms; and Dina Pizzingrillo, member and Associate Shop Steward (collectively “Defendants”). In his application to the district court, Dun-lop-McCullen, chairperson of the Union’s Executive Board, contended that defendants had breached their fiduciary duties by wastefully and improperly spending the Union’s *87 money, and that his formal complaint within the Union about these breaches had remained unresolved after four months. Plaintiff sought an accounting, compensatory damages and various other equitable relief.
On March 7, 1997, Magistrate Judge Douglas F. Eaton, to whom the case had been referred, issued a Report and Recommendation (“Report”) advising that Dunlop-McCullen be denied leave to file the verified complaint because “the plaintiff himself has wasted union funds, and therefore lacks the clean hands necessary for a plaintiff to pursue an equitable action” of an accounting. Report at 1. Judge Eaton pointed to the fact that Dunlop-McCullen had brought a prior pro se action against the union and two of the same officials sued in the instant action (Pascarella and Samuels), which the district court dismissed by summary judgment in favor of the defendants. Judge Eaton stated that in the prior ease “the union mailed [Dunlop-McCullen’s] campaign literature at a cost of $1,601.50” and after his unsuccessful campaign for union officer he “avoided paying this [campaign] debt [to the Union] by filing [for] personal bankruptcy.” Report at 2. Furthermore, Judge Eaton noted that this Court had affirmed the grant of summary judgment in the previous case and taxed appellate costs in favor of the union in the amount of $1,037.76, which “[a]s far as [he could] tell, plaintiff ha[d] not paid.” Report at 2. As a result, Judge Eaton found:
[P]laintiff has.not shown a reasonable likelihood of success, because he lacks the clean hands which a court of equity requires for a plaintiff to pursue an action for an accounting. As noted above, he has cost the union $1,601.50, plus $1,037.76, plus thousands of dollars in legal fees. If his allegations had any merit, there should be a plaintiff who could come to the court of equity with clean hands, and whose past conduct would give some assurance that he or she truly represented the interests of the union members.
Report at 3. In support of his contention that plaintiff requires “clean hands” to proceed, Judge Eaton analogized a section 501(b) action against a union to a “derivative action against a corporation,” in which similar equitable considerations have been applied to a plaintiff seeking to sue. Report at 3.
On March 28, 1997, Dunlop-McCullen filed a verified objection to the Report, essentially alleging that: (1) the Report unfairly “prejudged” his case without any relevant evidence; (2) as an officer of the Union, he was obliged to bring the instant action or violate his duty to the Union members; (3) the prior case concerned different allegations and should not have been relied upon by Judge Eaton to determine likelihood of success in the instant case; and (4) defendants, not plaintiff, have unclean hands because “Plaintiff has not refused to pay the judgment [of costs] but there are mitigating circumstances concerning what the defendants, Local 1 — S[,] owes the plaintiff.” As to the last objection, plaintiff explained that a Bankruptcy court ordered Local 1-S to pay him $800 in damages “because of their wanton and willful violations of the Automatic Stay Provision” and he indicated that he would be willing to pay the difference in the two judgments.
In response to Dunlop-McCullen’s objections, the Union contended that Dunlop-McCullen’s application should have been denied because the Union’s internal Trial Committee was already conducting an investigation into the same issues he raised in his verified complaint. The Union also addressed Dunlop-McCullen’s allegations of its officials’ financial impropriety in some detail. In reply to the Union’s response, Dunlop-McCullen argued that the Union’s attorney could not represent the Union officers based on a conflict of interest. Further, he contended that the Trial Committee was an inadequate forum to pursue his claims under the LMRDA and the Union’s constitution and he countered the Union’s arguments dismissing Dunlop-McCullen’s allegations.
In a memorandum order, Judge Leisure made a de novo determination, as required by 28 U.S.C. § 636(b)(1). He determined that the Report was “legally correct and proper.” Dunlop-McCullen v. Local 1-S, AFL-CIO-CLC, No. 97 Civ. 0195, 1997 WL 272396, at *1 (S.D.N.Y. May 21, 1997). The district court held that Dunlop-MeCullen’s *88 objections to the Report were “not relevant to the question whether leave should be granted to file the instant action.” Id. The court found that the Report permissibly relied upon the decision in Dunlop-McCullen’s previous ease “only to the extent of its finding that plaintiff had filed for personal bankruptcy in order to avoid paying a debt to the Union and that plaintiff had caused the Union to incur legal fees (including the costs of an appeal ... which he apparently never paid).” Id. Further, the district court found that the defendants’ unclean hands were “not relevant to the question whether plaintiff lacks unclean hands.” Id. The district court quoted the Report in calling for a plaintiff in this case (as opposed to Dunlop-McCullen) whose “past conduct would give some assurance that he or she truly represented the interests of the union members.” Id. (quoting Report at 3). Moreover, the district court found that the Report did not unfairly “prejudge” plaintiffs case because the district court was “statutorily required to render an evaluation of the case” and “in light of the equitable doctrine of unclean hands and its effect on plaintiffs likelihood of success’— plaintiffs objections [were] not persuasive.” Id. at *2. Finally, the district court refused to reach the issue of the Union attorney’s conflict of interest finding that the issue was moot because Dunlop-McCullen was denied leave to serve his complaint. Id. On June 24, 1997, judgment was entered pursuant to the district court’s order. Dunlop-McCullen filed a timely notice of appeal.
II. DISCUSSION
On appeal, Dunlop-McCullen contends that the district court erred in determining that he had unclean hands barring him from suing under § 501(b). Principally, he argues that: (a) the district court improperly relied on costs taxed against him in favor of the Retail and Wholesale Department Store Union, a defendant in his prior litigation that is not party to the instant litigation; (b) the district court wrongfully relied on the nature of Dunlop-MeCullen’s bankruptcy proceedings in determining whether he had unclean hands; (c) the district court should have considered defendants’ unclean hands; (d) the district court and the magistrate judge improperly relied on his prior lawsuit. Finally, Dunlop-McCullen contends that he satisfied the “good cause” requirement of § 501(b) by alleging misuse of Union property, questionable accounting procedures, manipulation of financial affairs, non-reporting of the Union’s financial affairs, the misappropriation of funds, destruction of union records, “fraudulent” holding of a shop steward position, and non-reporting of the status of “Local 1-S Realty.”
Defendants counter that the district court was correct in finding that Dunlop-McCullen has unclean hands precluding his suit under § 501(b). Further, they contend that, even if Dunlop-MeCulleris past conduct were not found to be suspect, the allegations in his complaint were conclusory, meritless, or barred by the doctrine of res judicata. Finally, Defendants allege that the Union’s internal Trial Committee, which is currently responding to Dunlop-McCullen’s charges, will “moot” the need to receive his complaints in federal court. We need not address these arguments because the district court did not reach these issues in making its decision.
A. Unclean Hands and Section 501(b) of the LMRDA
We review de novo the district court’s denial of leave to file a complaint under section 501(b) as a matter of law. See Lopresti v. Terwilliger, 126 F.3d 34, 39 (2d Cir.1997) (finding, generally, that questions of law are reviewed de novo). Section 501(b) provides in relevant part:
When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover *89 damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte.
29 U.S.C. 501(b). Subsection (a) provides that union officials have a general fiduciary duty to the union.[1]
This Court has found that the “good cause” required for leave to sue under § 501(b) serves two policies: “[1] supervision of union officials in the exercise of their fiduciary obligations and [2] protection, through a preliminary screening mechanism, of the internal operation of unions against unjustified interference or harassment.” Dinko v. Wall, 531 F.2d 68, 75 (2d Cir.1976). Accordingly, we have construed “good cause” in § 501(b) “to mean that plaintiff must show a reasonable likelihood of success and, with regard to any material facts he alleges, must have a reasonable ground for belief in their existence.” Id.[2]
In this case, we must determine whether the district court, in determining plaintiffs “reasonable likelihood of success,” properly anticipated the equitable defense of “unclean hands” based on costs that defendants incurred in defending a prior lawsuit brought by the same plaintiff. As a preliminary matter, we agree with the district court that unclean hands may be a basis for determining a plaintiffs “reasonable likelihood of success” under section 501(b). The district court, however, cited no case in which the unclean hands doctrine has barred a filing under section 501(b). Instead, the Report analogized Dunlop-MeCullen to a plaintiff in a derivative action against a corporation, whose case was dismissed because of plaintiffs unclean hands. Report at 3.[3] The comparison of a § 501(b) action to a shareholder derivative action is apt. See Phillips v. Osborne, 403 F.2d 826, 831 (9th Cir.1968); Nelson v. Johnson, 212 F.Supp. 233 (D.Minn.), aff'd, 325 F.2d 646 (8th Cir.1963) (finding support for the analogy between shareholder derivative actions and union member actions under section 501(b) in the legislative history of the LMRDA). In our view, if a district court determines that a plaintiff seeking leave to file a complaint under § 501(b) will likely be faced with the equitable defense of unclean hands, then the district court may factor this determination into its decision upon the plaintiffs reasonable likelihood of success. Therefore, we think that a determination of a plaintiffs unclean hands is an *90 appropriate factor — though not necessarily a dispositive one — to be used when deciding whether to grant a plaintiff leave to file a complaint under section 501(b).
Thus, we must determine whether Dunlop-McCullen’s failure to pay costs taxed against him in his prior action against the Union constitutes unclean hands. The doctrine of unclean hands is based on the principle that “since equity tries to enforce good faith in defendants, it no less stringently demands the same good faith from the plaintiff.” 11A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2946, at 108 (1995) (quotation marks and citation omitted). We have held, however, that “[m]iscon-duct ... unrelated to the claim to which it is asserted as a defense, does not constitute unclean hands.” A.H. Emery Co. v. Marcan Prods. Corp., 389 F.2d 11, 18 (2d Cir.1968) (quotations and citations omitted). Moreover, “while equity does not demand that its suitors shall have led blameless lives, as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue.” Precisian Instrument Mfg. Co. v. Automotive Maint. Mach. Co., 324 U.S. 806, 814-15, 65 S.Ct. 993, 89 L.Ed. 1381 (1945) (quotation marks and citation omitted); see also Warner Bros. Inc. v. Gay Toys, Inc., 724 F.2d 327, 334 (2d Cir.1983) (“[T]he defense of unclean hands applies only with respect to the right in suit.”). Further, “[t]he unclean hands defense is not an automatic or absolute bar to relief; it is only one of the factors the court must consider when deciding whether to exercise its discretion and grant an injunction.” 11A Wright, Miller, Kane, Federal Practice and Procedure: Civil 2d § 2946, at 111. “The doctrine of unclean hands also may be relaxed if defendant has been guilty of misconduct that is more unconscionable than that committed by plaintiff.” Id. § 2946, at 112.
One district court has held that a § 501(b) plaintiffs involvement in prior litigation is an insufficient ground for finding absence of good cause. See Woods v. Local No. 12 Sheet Metal Workers Int’l Ass’n, 438 F.Supp. 578, 581 (W.D.Pa.1977). Without invoking the doctrine of unclean hands explicitly, the defendants in Woods asserted that a plaintiff’s prior LMRDA litigation, which was found meritless, precluded a finding of good cause under section 501(b). Because the plaintiffs had alleged colorable claims that dealt with issues different from those in the prior litigation, however, the court “deem[ed] it appropriate to grant plaintiffs access to [the] court.” Id. The outcome in Woods, however, while instructive, does not ultimately resolve the issues in this case because the court’s conclusion in Woods did not employ this Court’s heightened good cause requirements for § 501(b) cases. We agree with the court in Woods, however, that a plaintiff may not be denied leave to file a complaint under § 501(b) where plaintiff alleges issues different from those raised in a prior similar action dismissed on the merits. Therefore, Dun-lop-McCullen’s previous case against the Union that, as we discuss below, involved substantially different allegations, should not act as a bar to proceeding here under § 501(b).
B. The Impact of Dunlop-McCullen’s Previous Cases
On February 24, 1994, Dunlop-MeCullen filed a pro se complaint (the “1994 Complaint”) in the district court against the Union, two of the individual defendants in this action, and the Retail Wholesale and Department Store Union AFL-CIO (the “International”). See Dunlop-McCullen v. Local 1-S RWDSU-AFL-CIO, No. 94 Civ. 1254, 1994 WL 478495 (S.D.N.Y. Sept. 1, 1994) (finding that Dunlop-McCullen’s complaint survives defendants’ Fed.R.Civ.P. 12(e) motion for a more definite statement); Dunlop-McCullen v. Local 1-S RWDSU-AFL-CIO, No. 94 Civ. 1254, 1996 WL 3940 (S.D.N.Y. Jan. 3, 1996) (granting defendants’ motion for summary judgment). His complaint contained several causes of action including violations of § 301 of the National Labor Relations Act, 29 U.S.C. § 185, and various sections of LMRDA, 29 U.S.C. §§ 411, 501(b), & 529. Dunlop-McCullen, 1996 WL 3940, at *1.
The 1994 Complaint was based on the following facts. In September 1992, Dunlop-MeCullen became a candidate for Executive Vice-President of the Union. 1996 WL 3940, *91 at *1. Pursuant to Department of Labor rules, he was entitled, at his own expense, to have the union mail his campaign literature. Id. On December 21, 1992, he was billed $1601.50, the amount the Union incurred from his election mailing. Id: Dunlop-McCullen lost the election.
In April 1993, Dunlop-McCullen filed for bankruptcy. On November 24,1993, the Union commenced an adversary proceeding against Dunlop-McCüllen, under § 523(a) of the Bankruptcy Code (the “Code”), objecting to the discharge of the debt owed by him to the Union under §§ 727(a)(4)(A) and (D) of the Code. See In re Dunlop-McCullen, No. 1-93-12859-352, at 1 (Bankr.E.D.N.Y. July 31, 1995) (hereinafter “Order Dismissing Adversary Proceeding”). Dunlop-McCullen counterclaimed alleging that the Union violated the automatic stay provisions of § 362(a) of the Code and moved to dismiss the adversary proceeding. Id. at 1-2.
In September 1993, Dunlop-McCullen was elected the Queens Chairperson, entitled to sit on the Executive Board (the “Board”) of the Union. Dunlop-McCullen, 1996 WL 3940, at *1. On September 23, 1993, the Board voted to void Dunlop-McCullen’s election because, according to the Union Constitution, he was ineligible to be elected officer. Id. To be eligible for any Union office, members have to be in continuous good standing for twelve months prior to being nominated for elective office. Id. at *2. According to the Union, in January 1993, Dunlop-McCullen ceased to be a member in good standing when he failed to pay the Union for mailing his 1992 campaign literature. Id.
In the 1994 Complaint, he alleged that when the Board voided his 1992 election and removed him from office in September 1993, he was “disciplined” without a hearing required under LMRDA, 29 U.S.C. § 411(a)(5), 529, and under the Local and International Unions’ Constitutions. Id. at *2. Secondarily, Dunlop-McCullen alleged that the Union failed to process his grievances fairly, circumvented its obligations under collective bargaining agreements, committed fraud in persuading members to accept a new collective bargaining agreement, libeled him, and violated his rights to free speech and due process. Finally, similar to the instant action, Dunlop-McCullen claimed that the Union breached its fiduciary duties by allowing the non-member daughter of Samuels, a union official, to make use of a car rented by Local 1-S for Samuels, in violation of 29 U.S.C. § 501(b).
Meanwhile, on July 26, 1994, the Bankruptcy Court held a trial to resolve the adversarial proceeding initiated by the Union and Dunlop-McCullen’s counterclaims; both parties were represented by counsel. Almost a year later, on July 31, 1995, the bankruptcy court found from the evidence that “there was no false oath or account or withheld information such as would bar discharge” of the debt and that “Local 1-S was not fraudulently induced to incur the Debt- or’s debt to it -within Section 523(a)(2)(A).” Order Dismissing Adversary Proceeding, at 2. .Furthermore, the bankruptcy court held that “Local 1-S had willfully violated the automatic stay” provisions. Id. As a result, the bankruptcy court ordered the Union to pay Dunlop-McCullen $800 in punitive damages and fees and disbursements to his attorney under Section 362(h) for willful violation of the automatic stay. Id. at 3. There is no evidence that these sums have been paid to Dunlop-McCullen by the Union.
In a separate order, the bankruptcy court ordered “that Local 1-S will treat the Debtor as though he had been in good standing continuously for purposes of seniority, advancement, elective office, and any similar purpose” and that “Local 1-S will restore Debtor to his elected office as Chairman of the Macy’s Queens Store for the remainder of the term for which he was elected” in 1992. In re Dunlop-McCullen, No. 1-93-12859-352, at 2 (E.D.N.Y. July 31, 1995) (hereinafter “Order Directing Remedial Relief’). Further, the bankruptcy court determined that Dunlop-McCullen “is now and has always been a member ... in good standing ... entitled to all the privileges ... attendant thereto, including his ... right to stand for future election.” Id. at 2. As a result, Dunlop-McCullen regained his position on Local 1-S’s Executive Board — a position he still holds.
*92 In the district court proceedings, also in late July 1995, defendants filed motions for summary judgment on all of Dunlop-McCul-len’s claims, which were granted on January 3, 1996. The district court held that under the LMRDA and the Union’s Constitution “removal from office did not constitute discipline” requiring due process and that the Union’s “good standing requirement” was not shown to be unreasonable or unevenly applied to Dunlop-MeCullen. Dunlop-McCullen, 1996 WL 3940, at *2. In analyzing Dunlop-McCullen’s second set of allegations individually, the district court found them each to be without merit. Lastly, the district court ruled that Dunlop-MeCullen failed to adduce evidence sufficient “to show that plaintiff formally requested the Executive Board of Local 1-S to institute legal proceedings against Samuels.” Id. at *4. On February 22, 1996, judgment was entered dismissing the complaint in favor of defendants.
Dunlop-MeCullen appealed to this Court, which affirmed the district court by summary order. Dunlop-McCullen v. Local 1-S RWDSU-AFL-CIO, No. 96-7104, 1996 WL 614814 (2d Cir. Oct. 25,1996). On November 8, 1996, the International and the Local each submitted a separate statement of costs in the amounts of $1037.76 and $1063.83, respectively, but only one was filed. On January 10, 1997, however, the Clerk of this Court filed an amended order for bills of costs for the International and the Local in the amounts of $929.66 and $946.65, respectively. According to the records of the Clerk of the Court for the Southern District of New York, no satisfaction of judgment has been filed on either of these awards.
After analyzing Dunlop-McCullen’s previous cases involving the Union, we find that the plaintiff does not have unclean hands which would bar him from obtaining leave to file a complaint under section 501(b) of the LMRDA. First, the magistrate judge’s Report overstates the causal connection between Dunlop-McCullen’s bankruptcy proceeding and his failure to pay his campaign debt to the Union. The district court in the previous ease made no finding that Dunlop-MeCullen filed for bankruptcy with the express and sole purpose of avoiding his debt to the Union. On the contrary, after a full trial on that very issue, in which the Union’s interests were duly represented by counsel, the bankruptcy court found that Dunlop-MeCullen was guilty of no wrongdoing that might disentitle him to a discharge of the debt. The bankruptcy court even went so far as to order that Dunlop-MeCullen be reinstated to his elective office. We think that it would be inappropriate here to second-guess the bankruptcy court by reaching our own determination that Dunlop-McCul-len was bent on wasting the Union’s assets in declaring bankruptcy which discharged his debt to the Union. Therefore, we find that the outcome of Dunlop-McCullen’s previous bankruptcy proceeding does not provide evidence of plaintiff’s unclean hands which would prevent his “reasonable likelihood of success” in the instant § 501(b) proceeding.
In contrast, we think that a plaintiffs failure to pay an assessment of costs awarded to the Union (by prior order of this Court) in a previous case may be evidence of unclean hands where the plaintiff alleges that officers of the same Union wasted its assets in violation of 29 U.S.C. § 501(a). Nonetheless, the Union has outstanding debts to Dunlop-MeCullen in the form of punitive damages and attorney’s fees from the bankruptcy proceeding that roughly equal what Dunlop-MeCullen owes the Union in costs from the appellate proceeding in the previous case. Plus, Dunlop-MeCullen received his bankruptcy judgment against the Union in July 1995, more than a year before the Union received its judgment for appellate costs against him in November 1996. Thus, any evidence that Dunlop-McCullen “wasted the union’s funds” in the amount taxed in appellate court costs should be counterbalanced by bankruptcy court damages and fees due to him from the Union. Further, Dunlop-MeCullen is correct that because the International Union is not a party to the instant proceeding any costs awarded to it in the previous case have little bearing on our determination of his unclean hands vis a vis a new action against the Local Union.
As discussed above, in determining whether the doctrine of unclean hands bars an equitable remedy, courts are permitted to *93 weigh the wrongdoing of the plaintiff against the wrongdoing of the defendant. 11A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2946, at 112. Where, as here, the wrongful conduct of both the plaintiff and the defendants are remarkably similar in quality and extent, equity requires this Court to look to whether the defendants’ wrongdoing alleged in the complaint is of a greater magnitude than the plaintiffs wrongdoing. Admittedly, more than a few of the claims that Dunlop-McCullen alleged are not actionable under § 501(b). For example, § 501(b) provides no basis for his claims regarding the “sweetheart” deal with Many’s or the improper tenure of Pizzingrillo as shop steward. See Gurton v. Arons, 339 F.2d 371, 375 (2d Cir.1964) (“[Section 501] applies to fiduciary responsibility with respe'et to the money and property of the union and ... it is not a catch-all provision [permitting suit] on any ground of misconduct.”). Dunlop-McCullen, however, has alleged claims that - “centrally challenge [the], misuse of union ‘money and property.’” Guzman v. Bevona, 90 F.3d 641, 646 (2d Cir.1996) (quoting 29 U.S.C. § 501(a)). Especially in view of the fact that any wrongdoing attributable to the plaintiff is counter-balanced by that attributable to the defendants, the additional alleged misdeeds of defendants are sufficient to permit this litigation to proceed further. Therefore, Dunlop-MeCullen should not be prevented from being granted leave to file suit under § 501(b) based on the unclean hands doctrine. Accordingly, we remand this case for further consideration by the district court consistent with this opinion.[4]
III. CONCLUSION
We order that the judgment of the district court be vacated, and this ease be remanded for further consideration consistent with this opinion.

. Section 501(a) provides that union officials have a duty to the labor organization:
to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions ..., to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with [their] duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.
29 U.S.C. § 501(a).

. We note that other Circuits have declined to adopt such a heightened standard for "good cause” in § 501(b). See Loretangeli v. Critelli, 853 F.2d 186, 191 (3d Cir.1988); Horner v. Ferron, 362 F.2d 224, 229 (9th Cir.1966); George v. Local Union No. 639, 98 F.3d 1419, 1422 (D.C.Cir.1996); Erkins v. Bryan, 663 F.2d 1048, 1053 (11th Cir.1981).

.We note that the magistrate judge cited several cases in support of the proposition that federal courts will prevent shareholders from bringing derivative actions when they have had unclean hands. Report at 3 (citing Cohen v. Beneficial Loan Corp., 337 U.S. 541, 549, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); Recchion, Westinghouse Corp. v. Kirby, 637 F.Supp. 1309, 1315-16 (W.D.Pa.1986); Ryan v. Aetna Life Ins. Co., 765 F.Supp. 133, 135 (S.D.N.Y.1991) (Leisure, J.)). These cases are of questionable relevance to the instant case in determining whether the extent and type of Dunlop-McCullen's prior conduct amounts to unclean hands which would cause the district court to deny him leave to file his complaint under § 501(b). In 'Cohen, the statute in issue required small shareholders seeking to litigate derivative actions to give security for a defendant's litigation expenses but did not completely bar access to the courts based on a failure to satisfy this posting. In Recchion, the plaintiff's unclean hands arose from his alleging in his complaint misconduct for which he had personally been responsible. 637 F.Supp. at 1315. And, Ryan only notes the importance of scrutinizing a shareholder plaintiff's conflicts of interest before permitting him or her to proceed with such litigation. 765 F.Supp. at 135.

. We note that at oral argument no attorney appeared for the defendants. While this nonappearance has no bearing on our decision here, Dunlop-MeCullen represented to this Court it was attributable to the fact that the Executive ■ Board had been dissolved as a result of internal inquiries initiated by Dunlop-MeCullen. If Dun-lop-McCullen’ representations are accurate, then the board’s dissolution may bolster Dunlop-McCullen’s § 501(b) case. We also note that Dunlop-MeCullen makes allegations of serious wrongdoing in his complaint that, based on their number and complexity, might be pursued with greater success with the assistance of an attorney, especially because § 501(b) provides for attorney's fees to be awarded to successful plaintiffs. We urge Dunlop-MeCullen and the district court to give consideration to appointment of counsel in the event that leave to file a complaint is not barred on some ground not discussed herein.