**J–RICH CLINIC, INC., d/b/a Real Purity, Plaintiff–Appellant,**

v.

**COSMEDIC CONCEPTS, INC., d/b/a Philosophy, and Philosophy, Inc., Defendants–Appellees.**

Nos. 03–1329, 03–1535, 03–1363, 04–1132.

United States Court of Appeals, Sixth Circuit.

May 18, 2004.

Eric C. Grimm, Calligaro & Meyering,
Taylor, MI, for Plaintiff–Appellant.

Jill M. Wheaton, Dykema Gossett, Detroit, MI, Michael K. Kelly, Snell & Wilmer, Phoenix, AZ, for Defendant–Appellee.

Before BATCHELDER and GIBBONS, Circuit Judges; and BEER, District Judge.*

GIBBONS, Circuit Judge.

Plaintiff-appellant J–Rich Clinic, Inc. ("J–Rich") alleges that it has marketed and sold a line of cosmetics and skin cleansers under the name "Real Purity" since 1986. Defendant-appellee Philosophy, Inc. ("Philosophy") obtained federal trademark registration for "Real Purity" in 1997 and uses that mark in connection with a competing skin cleanser. In 2002, J–Rich brought suit against Philosophy alleging claims of trademark infringement, trademark dilution, and unfair competition. Pending the resolution of its claims on the merits, J–Rich seeks a preliminary injunction prohibiting defendant-appellee Philosophy, Inc. ("Philosophy") from utilizing the marks "Real Purity" and "Purity Made Simple."

The procedural history of this case is complicated because it has proceeded simultaneously in the district court and in this court on various motions and appeals. After a brief hearing[1] in early February

* The Honorable Peter Beer, United States District Judge for the Eastern District of Louisiana, sitting by designation.

1. Prior to this hearing, plaintiff submitted a declaration from Dr. Richard Easterling, president and owner of J–Rich, in support of its motion for a preliminary injunction. Easterling stated that J–Rich had sold Real Purity products continuously since 1986. Attached to his declaration were lists of ingredients for Real Purity products and consumer reviews of Philosophy's Real Purity skin cleanser. In response, Philosophy submitted three declarations. The primary declaration was that of Philosophy's founder, Cristina Carlino, attesting to Philosophy's volume of sales and her development of Philosophy's Real Purity skin cleanser. Plaintiff then submitted three additional declarations: one from plaintiff's own counsel attesting to the truthfulness of his client's allegations; one from Vincene Parri- nello, a proprietor of a separate line of skin care products who had been involved in a previous lawsuit with Philosophy: and one from Clinton Meyerling, another attorney for J–Rich. Shortly before the hearing on the motion for a preliminary injunction. J–Rich submitted a supplemental declaration from Dr. Easterling. Attached to this declaration were various J–Rich records, including requests from individuals for Real Purity skin cleanser, advertisements in environmental product catalogs, and telephone records. The J–Rich declarations contain facts pertinent to its claim for injunctive relief, as well as conclusions, allegations, and argument not properly part of the testimony of a fact witness. The district court did not consider any oral testimony or any evidence other than the declarations at the hearing.

2003, the district court determined in an order filed February 10, 2003, that J–Rich was entitled to a preliminary injunction but held the injunction in abeyance and requested briefing from the parties on remedies that would address J–Rich's concerns about consumer confusion and would also address Philosophy's concerns about the costs of separating its "Real Purity" cleanser from other products with which it had been packaged. In an order filed February 28, 2003, the district court issued the injunction but gave Philosophy two months to rebrand and repackage its product. The court also found that a "gradual transition period" was warranted and allowed Philosophy to sell its remaining stock of "Real Purity" skin cleanser (1) on its website, (2) to foreign purchasers, and (3) on the QVC Home Shopping Network ("QVC"). The court indicated its agreement with Philosophy that the injunction was properly conditioned on J–Rich's posting a bond in the amount of $173,000 but gave J–Rich five days to file any opposition to the amount of the bond. J–Rich appealed from the February 10 and 28 orders. It did not file any opposition to the amount of the bond and has never posted a bond.

In spite of the district court's order allowing Philosophy to sell its "Real Purity" product on QVC, counsel for J–Rich sent a letter to QVC's president four days before a scheduled QVC appearance by Philosophy threatening legal action against QVC if it sold Philosophy's skin cleanser without an attached disclaimer. Philosophy brought this letter to the attention of the district court, and a contempt hearing was held on March 7, 2003. After the hearing, the district court entered an order on March 14, 2003, vacating its prior grant of injunctive relief and denying J–Rich's mo-

tion for a preliminary injunction. J–Rich filed an amended notice of appeal including the March 14 order among the orders from which an appeal was taken. Philosophy cross-appealed from the March 14 order.

At some point after April 30, 2003. Philosophy began marketing its skin cleanser under the name "Purity Made Simple." In August 2003 J–Rich requested that the district court issue an injunction pending appeal. The district court denied the motion in an August 19, 2003, order, saying that it raised the issues that were already the subject of J–Rich's appeals. J–Rich then moved this court for a preliminary injunction pending its appeals. This motion requested that we enjoin Philosophy's use of both "Real Purity" and "Purity Made Simple" despite the fact that the district court had not yet considered the propriety of the new labeling. J–Rich also asked that we dismiss Philosophy's cross-appeal. On October 30, 2003, we declined to issue the injunction sought by plaintiff, noting the "fairly intrusive" nature of the relief sought and the fact that changed circumstances might raise an issue of mootness. We also declined to dismiss the cross-appeal.

On November 17, 2003, J–Rich asked this court to reconsider its October 30 order, and on December 1, 2003, J–Rich renewed its request for an injunction before the district court. This renewed motion was supported by two declarations from customers relating to Philosophy's use of both the "Real Purity" and "Purity Made Simple" marks.[2] Without the benefit of a response from Philosophy, on December 19, 2003, the district court entered a temporary restraining order prohibiting Philosophy from selling products bearing the names "Real Purity" or "Purity Made

---

**2.** These declarations contained facts in support of plaintiff's claim, but also included legal arguments and conclusions that are not a proper part of the statements of a fact witness.

Simple" without a prominent disclaimer label attached. On January 5, 2004, this court entered an order denying J–Rich's motion for reconsideration and noted in particular that "[t]he subsequent activity in the district court relating to this litigation further makes it inappropriate for this court to modify the prior order." On January 12, 2004, the district court dissolved its temporary restraining order entered December 19, 2003, saying that it was "overly broad and improvidently entered." The district court noted that injunctive relief was not appropriate as to the "Real Purity" mark "[b]ased on the Court of Appeal's (sic) decision and Philosophy's commitment not to use" the mark. The district court also concluded that it could not find that plaintiff had a likelihood of success on the merits with regard to the "Purity Made Simple" mark. J–Rich appealed from the January 12 order. We consolidated all appeals in the case.

This court reviews a district court's decision to grant or deny a preliminary injunction for an abuse of discretion. *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 717 (6th Cir.2003); *Dubuc. v. Mich. Bd. of Law Examiners*, 342 F.3d 610, 620 (6th Cir.2003). A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact. *Schenck v. City of Hudson*, 114 F.3d 590, 593 (6th Cir.1997).

■ We find no abuse of discretion by the district court in dissolving the initial injunction based on the conduct of counsel for J–Rich. A preliminary injunction is an equitable remedy, the purpose of which is to maintain the relative positions of the parties until proceedings on the merits can be conducted. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). The doctrine of un-

clean hands is based on the principle that "since equity tries to enforce good faith in defendants, it no less stringently demands the same good faith from the plaintiff." *Dunlop–McCullen v. Local 1–S, AFL–CIO–CLC*, 149 F.3d 85, 90 (9th Cir.1998). "[W]hile equity does not demand that its suitors shall have blameless lives, as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy at issue." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814–15, 65 S.Ct. 993, 89 L.Ed. 1381 (1945) (citations and quotation marks omitted). We note also that J–Rich never posted the bond on which the injunction was conditioned. Because the district court did not abuse its discretion in dissolving the initial injunction, we need not consider the merits of J–Rich's appeals from the district court's February orders or of Philosophy's cross-appeal.

■ With regard to the January 12 dissolution of the temporary restraining order entered December 19, it appears that the district court may have interpreted our October 30 and January 5 orders as resolving the ultimate issues with regard to use of the "Real Purity" mark and the appeals relating to the district court's orders of February 10 and 28 and March 14. The district court seems to have believed that those appeals had been determined adversely to J–Rich on the merits. In fact, we simply declined to enter an injunction pending a hearing on the merits of the appeals in view of the changing circumstances of the parties, *i.e.*, Philosophy's use of the "Purity Made Simple" mark, and J–Rich's request that we grant relief on claims relating to that use, claims on which the district court had not yet ruled. We later declined to reconsider that decision based on our initial reasoning and for the additional reason of subsequent develop-

ments in the district court, specifically the issuance of the temporary restraining order. Based on the apparent misunderstanding of our orders, which may have affected the district court's thinking about both the "Real Purity" and "Purity Made Simple" marks, it is appropriate to remand this case to the district court for further consideration of the motion for preliminary injunction.

In an effort to facilitate the prompt and orderly resolution of this case, we offer the following additional comments. This case was filed October 31, 2002. Since its filing, little has been accomplished that contributes to a final determination of the dispute between the parties. The ultimate decision of the case on the merits depends largely on whether J–Rich is entitled to injunctive relief based on the circumstances at this time and the terms of any injunction. While we express no opinion about whether J–Rich should obtain the relief it seeks in the district court, the most fruitful way to proceed appears to be a full evidentiary hearing on the preliminary injunction motion in the district court in the very near future. Any preliminary injunction entered may of course be conditioned on the posting of an appropriate bond. Moreover, there appears to be no reason that the hearing on the preliminary injunction should not be consolidated with trial on the merits as expressly permitted by Rule 65(a)(2) of the Federal Rules of Civil Procedure. We recognize that the district court's scheduling order, filed January 9, 2004, sets trial of this case for February 8, 2005, and establishes a discovery completion date of June 30, 2004, and a deadline for filing potentially dispositive motions of September 30, 2004. Certainly, the district court has discretion to set the schedule for progress of the case. Nevertheless, we suggest that upon remand the district court may wish to inquire as to whether that schedule can be substantially expedited, given the fact that the parties have already had many months within which to conduct discovery. We also express the hope that on remand counsel will proceed in an atmosphere of cooperation and approach the case with common sense and professionalism. Their goal should be to achieve the client's objectives without inappropriate conduct, unnecessary filings, insults and references to complete irrelevancies.[3] Activities of this type detract from the object of the litigation, *i.e.,* the fair, full and prompt resolution of the parties' differences, and create needless expense for the litigants.

Accordingly, we vacate the district court's January 12, 2004, order denying J–Rich's request for injunctive relief and remand this case for further proceedings consistent with this opinion.

---

**3.** We direct this remark particularly at counsel for plaintiff, whose own inequitable conduct squandered the injunctive relief initially granted to J–Rich. In addition, counsel for plaintiff has persistently mischaracterized both this court's and the district court's prior orders in this case and has directed accusations at both courts and opposing counsel in his filings, as well as matters having nothing to do with the merits of the case. We remind counsel of his duty, as an officer of the court, "to proceed only by means that are truthful and honorable, and to avoid offensive personality." Mich. Rules of Prof'l Conduct R. 6.5 cmt. (2002).