**TEEVEE TOONS, INC.
et al., Plaintiffs,**

v.

**MP3.COM, INC., Defendant.**

No. 00 Civ. 3951(JSR).

United States District Court,
S.D. New York.

March 25, 2001.

Sharon P. Carlsedt, Thelen, Reid & Priest, L.L.P., New York City, for plaintiffs.

Jeffrey Conciatori, Michael B. Carlinsky, Orrick, Herrington & Sutcliffe LLP, New York City, Kenneth A. Plevan, William F. Patry, Paul M. Fakler, Skadden, Arps, Slate, Meagher & Flom LLP, New York City, for defendant.

## MEMORANDUM AND ORDER

RAKOFF, District Judge.

This Memorandum and Order will serve to elaborate the Court's rulings on plaintiffs' and defendant's cross-motions for partial summary judgment, as initially set forth in the Court's Order dated March 4, 2001 (the "March 4 Order").

■ In the March 4 Order, the Court held, first, that defendant is collaterally estopped from denying that its My. MP3.Com service willfully infringed the copyrights applicable to the sound recordings and musical works copied by defendant for that service. Collateral estoppel on these issues is appropriate because, *inter alia*, plaintiffs stand in all essential respects in exactly the same position as

the primary plaintiff in *UMG Recordings, Inc. et al. v. MP3.Com, Inc.*, No. 00 Civ. 472, whose copyrights were found to have been willfully infringed by defendant MP3.Com, Inc. in the same operation of its My.MP3.Com service at issue in the instant suit. *See UMG Recordings, Inc. v. MP3.Com, Inc.*, 92 F.Supp.2d 349 (S.D.N.Y.2000) (infringement); *UMG Recordings, Inc. v. MP3.Com, Inc.*, 2000 WL 1262568, at*1–*2 (S.D.N.Y. Sept. 6, 2000) (willfulness).

While defendant argues that there are factual differences between the *UMG* suit and this one that make the imposition of collateral estoppel inappropriate, its arguments are so unpersuasive on their face as to warrant but little discussion here. For example, defendant argues that analysis of its "fair use" defense to infringement would be different in this case than in *UMG* because here plaintiffs themselves permitted free downloading of their musical recordings on their website (as well as, allegedly, on the Napster online service). While plaintiffs respond that their own activities in this regard were limited to obtaining demographic information from users, the more essential point is that, even if plaintiffs' own uses were more exploitive (as, indeed, defendant claimed of the *UMG* plaintiffs' prospective uses in that case), defendant's activities would still "invade plaintiffs' statutory right to license their copyrighted sound recordings to others for reproduction" and would still infringe "a copyrightholder's exclusive rights . . . within broad limits, to curb the development of such a derivative market by refusing to license a copyrighted work or by doing so only on terms the copyright owner finds acceptable." *UMG*, 92 F.Supp.2d at 352 (internal quotation marks omitted).

Defendant contends that this case is also different from *UMG* because plaintiffs' artists are generally less well-known than those of the "major" record labels involved in *UMG*, and that, partly as a result, the My.MP3.Com service has had (according to defendant's expert) no negative effect on plaintiffs' record sales and has caused no increase in the amount of piracy of plaintiffs' copyrights. But these alleged differences are, again, irrelevant, for in *UMG* infringement was found even on the assumption (there argued) that defendant's activities would actually serve to increase the *UMG* plaintiffs' retail sales. As the Court there concluded, "[a]ny allegedly positive impact of defendant's activities on plaintiffs' prior market in no way frees defendant to usurp a further market that directly derives from reproduction of the plaintiffs' copyrighted works." *UMG*, 92 F.Supp.2d at 352. *A fortiori*, any claim that defendant's activities are defensible because they had no negative effect on plaintiffs' sales was effectively decided in the prior case, and defendant is precluded from reasserting it as a defense in the instant lawsuit.

Defendant's other objections to the use of collateral estoppel here are even less defensible. For example, defendant purports to argue that the Court never finally decided the issue of willfulness in *UMG* because it was not mentioned in the final judgment entered on consent—as if the Court's detailed and public pronouncement of its final findings of fact and conclusions of law of defendant's willfulness, *UMG*, 2000 WL 1262568, could somehow be ignored. The Court has also considered defendant's remaining arguments but finds them utterly without merit. Accordingly, defendant is collaterally estopped from disputing plaintiffs' contentions that defendant willfully infringed the copyrights here in issue, assuming these copyrights apply to certain of the works copied on My. MP3.Com and are otherwise valid.

The Court's second ruling in the March 4 Order, precluding plaintiffs' claims for statutory damages for infringements of copyrights that were registered subsequent to their infringement, was entered on consent, and therefore requires no further elucidation here.

■ In its third ruling in the March 4 Order, the Court held that plaintiffs who own the copyrights on musical compositions here infringed may recover statutory damages for such infringements separately from the statutory damages recoverable by the different plaintiffs who own the copyrights on the sound recordings of the same works. The dispute this ruling resolved derived from the fact that under the copyright law's unusual approach to statutory damages, "all parts of a compilation or derivative work constitute one work" for statutory damages purposes, 17 U.S.C. § 504(c)(1), even though they may constitute multiple works for other purposes. Thus, in *UMG Recordings, Inc. v. MP3.COM, Inc.*, 109 F.Supp.2d 223 (S.D.N.Y.2000), the Court held that the statute precluded an individual plaintiff who owned the copyrights on both the individual sound recordings that made up each of the CDs in issue and the compilation that comprised the CD itself from recovering more than a single award of statutory damages per CD.

Here, however, as to each musical work infringed, a separate plaintiff allegedly owns the copyright on the music composition from the plaintiff that owns the copyright on the sound recording.[1] Although defendant argues that since the statutory definition of "derivative work" includes a "sound recording," 17 U.S.C. § 101, both the composition and recording must be considered a single work for statutory damages purposes, such a theory would lead to absurd results, for it would permit

separate copyrightholders of the composition and the recording, if suing separately, to each recover statutory damages, but if suing in the same action to be limited to a single award of statutory damages. 2 Paul Goldstein, *Copyright* § 12.2.2.1(b), at 12:52 (2d ed.2000); 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[E][1], at 14–70 to 14–70.2 (2000). Congress did not intend such an absurdity. Rather, the repeated use of the singular "copyright owner" in 17 U.S.C. § 504(c) makes clear that the mandate to consider "all the parts of a ... derivative work [as] one work" assumed a single owner of all parts of the derivative work, and the legislative history, while somewhat obscure, at least confirms that Congress simply meant to preclude an author from recovering multiple statutory damages for infringements of several different versions of a single work. 4 Nimmer & Nimmer, *supra*, § 14.04[E][1], at 14–70 to 14–70.1; *see* Goldstein, *supra*, § 12.2.2.1(b), at 12:52. It follows that where (as here alleged) the plaintiffs owning the copyrights on the musical compositions are separate from the plaintiffs owning the copyrights on the sound recordings, each may recover statutory damages, though each is limited to a single recovery per CD.

The Court's final ruling in the March 4 Order simply deferred until the time of trial, *i.e.* until March 26, 2001, other questions raised in the parties' motions, particularly those related to the validity of plaintiffs' copyright certificates. Since the time of trial is upon us, however, some further elucidation may be in order. Defendant's summary judgment motion sought, *inter alia*, a determination that plaintiffs' copyright registrations, on which they premise their claims for statutory damages, 17 U.S.C. § 504(c), are invalid because, alleg-

---

1. The Court does not preclude defendant from attempting to prove at trial that the plaintiffs are so closely affiliated as to be considered one company for statutory damages purposes.

edly, plaintiffs' applications represented that plaintiffs held ownership of the copyrights as "works made for hire," 17 U.S.C. § 201(b), whereas, according to defendant, the works were not in fact works made for hire. It is not clear from the record before the Court that plaintiffs made such a representation in every application for every copyright here at issue. But assuming they did, that does not entitle defendant to summary judgment precluding statutory damages, for several reasons.

To begin with, whether or not the works here belong to plaintiffs as "works made for hire" is itself a murky issue. *See, e.g.,* 146 Cong. Rec. S10,498 (daily ed. Oct. 12, 2000) (statement of Sen. Hatch noting lack of clarity in the law). On the other hand, it would appear from the sampling of agreements between the plaintiffs and the creators of the music in question that were furnished to the Court on the summary judgment motions that plaintiffs' ultimate ownership of the underlying copyrights in issue is not in doubt, for the agreements provide that total and complete ownership passes to the plaintiffs, either as works made for hire or, if such status is denied, by assignment. *See, e.g.,* Fiete Decl. of Feb. 13, 2001, Ex. A, "Co–Publishing Agreement" ¶ 2(a).

Someone who in fact lawfully owns a copyright but in seeking registration inaccurately denominates the basis for ownership (as here, allegedly, by checking the "work made for hire" box on the application form) does not thereby become subject to having the registration invalidated by an infringing party unless, at a minimum, the infringing party can show that the inaccuracy was both material and made in bad faith. *See Whimsicality, Inc. v. Rubie's Costume Co.,* 891 F.2d 452, 455 (2d Cir.1989); *Eckes v. Card Prices Update,* 736 F.2d 859, 861–62 (2d Cir.1984); *Arthur A. Kaplan Co. v. Panaria Int'l, Inc.,* 48 U.S.P.Q.2d 1315 (S.D.N.Y.1998).

Assuming plaintiffs can show at trial that as to each copyright here in issue they had a valid agreement at the time of application for registration that provided them with both potential "work made for hire" ownership and fallback ownership by assignment, defendant will be unable to satisfy the aforementioned standard and plaintiffs will be entitled as a matter of law to a determination that each such copyright certificate validly and conclusively supports a claim for statutory damages in this case. In such circumstances, the only issues left for the jury will be the determination of which of the copyrights willfully infringed by defendant were owned by plaintiffs and the amount of damages (statutory or actual) to which plaintiffs are entitled as a result of such willful infringement.

SO ORDERED.