**COPYRIGHT.NET MUSIC PUBLISHING LLC, et al., Plaintiffs,**

v.

**MP3.COM, Defendant.**

**No. 01 Civ. 7321(JSR).**

United States District Court, S.D. New York.

April 9, 2003.

Craig Albert, Leo G. Kailas, Reitler, Brown, L.L.C., New York City, for plaintiffs.

Robert Juman, Jeffrey Conciatori, Michael Caruso, Quinn, Emanuel, Urauhart, Oliver & Hedges, New York City, for defendant.

*MEMORANDUM*

RAKOFF, District Judge.

Prior to the settlement of this lawsuit, plaintiffs moved to strike five of defendant's affirmative defenses, specifically, the defenses of fair use, innocent intent, "express authority, license, or res judicata," advice of counsel, and failure to join indispensable parties. *See* Answer of MP3.com to Third Amended Complaint at 28–30 (Affirmative Defenses II–VI). Following briefing and oral argument the Court, on March 21, 2002, telephonically advised the parties of its ruling, striking the affirmative defenses of fair use, innocent intent, and advice of counsel with respect to plaintiffs' claim of direct infringement, striking the affirmative defense of express authority, license, or res judicata to the extent predicated on the "ASCAP," "SESAC," and "BMI" licenses but not to the extent predicated on the "Harry Fox" settlement agreement, striking in its entirety the affirmative defense

of failure to join indispensable parties, and otherwise denying the motion.

Thereafter, before the Court could embody this ruling in a written opinion, the case settled. Subsequently, however, the same defendant was sued in a number of similar cases pending before this Court, and the plaintiff in one such case has now requested that this Court memorialize in writing the reasons for the Court's ruling of March 21, 2002 as it may also bear on the related litigation. Having previously acceded to a similar request from defendant, *see* Memorandum, Feb. 26, 2003 (memorializing the reasons for the Court's granting of partial summary judgment in the above-captioned case), the Court here accedes to the instant request.

■ As to the first prong of the Court's ruling, little elaboration is necessary, for the conclusion that defendant MP3.com was collaterally estopped from raising the defenses of fair use and innocent intent with respect to plaintiffs' claim of direct infringement was already clear from this Court's prior written decisions bearing thereon. *See UMG Recording. Inc. v. MP3.com, Inc.*, 92 F.Supp.2d 349, 351–52 (S.D.N.Y.2000) (rejecting fair use defense); *UMG Recording, Inc. v. MP3.com, Inc.*, No. 00 Civ. 472, 2000 WL 1262568, at *1 (S.D.N.Y. Sept.6, 2000) (finding that MP3.com's infringement was willful); *Tee-vee Toons v. MP3.com, Inc.*, 134 F.Supp.2d 546, 546–47 (S.D.N.Y.2001) (finding defendant collaterally estopped from denying willful infringement and from asserting a fair use defense); *Zomba Recording Corp. v. MP3.com, Inc.*, No. 00 Civ. 6831 (S.D.N.Y. Apr. 9, 2001) (granting partial summary judgment to plaintiffs, rejecting a fair use defense, and finding that defendant's conduct was willful). The interesting question of whether such preclusive

effect also extends to such defenses when raised in the context of non-direct infringement claims, such as plaintiffs' claim of contributory infringement, was not reached because at oral argument plaintiffs expressly limited this prong of their motion to the direct infringement claim. *See* transcript, Mar. 7, 2002, at 3.

■ Defendant was also collaterally estopped from raising the advice of counsel defense with respect to the direct infringement claim. In the *UMG* case defendant, faced with an identical claim, expressly chose not to invoke the advice of counsel defense. *See UMG*, 2000 WL 1265268, at *4 ("[D]efendant, as is its right, has invoked attorney-client privilege and expressly disclaimed any defense of reliance on counsel."). While in the instant motion practice defendant contended it has been defrauded by its prior counsel into making this election, its proper recourse in such circumstances would have been either to move to vacate the prior judgment (which defendant chose not to do) or to file a malpractice action against former counsel (which defendant apparently did in California). But with the former judgment intact, the collateral consequences of defendant's prior election remained preclusive, and none of the cases on which defendant relied supported a contrary conclusion. *See Blonder–Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (applying the doctrine of collateral estoppel narrowly because of the specific complexities of patent litigation and possibility of serious error); *Schweizer v. Mulvehill*, 93 F.Supp.2d 376 (S.D.N.Y.2000) (holding that collateral estoppel did not preclude malpractice claim against former attorney); *Avon Dev. Enters. Corp. v. Samnick*, 286 A.D.2d 581, 730 N.Y.S.2d 295 (1st Dep't 2001).[1]

---

1. It should also be noted that at the time

defendant made its election to forego an ad-

■ Similarly precluded were defendant's assertions (and the affirmative defenses constructed thereon) that, because it obtained performing rights licenses from the American Society of Composers Authors and Publishers ("ASCAP"), the Society of European Stage Authors and Composers ("SESAC") and Broadcast Music, Inc. ("BMI"), it somehow believed it had been granted a license to make so-called "server copies" of the compositions. But the license with ASCAP was entered into on or about August 10, 1999 and that with SESAC on or about January 5, 2000, in both cases prior to the motion practice in *UMG*. If these performance right licenses granted, or were perceived by defendant as having granted, the implicit right to copy the compositions onto the My. MP3.com server, that defense should therefore have been raised in the *UMG* case. Development of a novel theory, not earlier raised in defense of a previously litigated issue, is not grounds for avoiding the preclusive effect of collateral estoppel. *See Hickerson v. City of New York*, 146 F.3d 99, 108 n. 6 (2d Cir.1998) ("'A party ... cannot avoid issue preclusion simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first.'") (quoting Moore's Federal Practice § 132.02(2)(d), at 132–26 (3d ed.1998)).[2]

Although defendant argued in the instant case that "this is a different fair use defense than [sic] that rejected in the *UMG* action, which emanated from the music listener's ownership of a CD as a pre-condition to accessing it through the My.MP3.com listening service," Def. Br. at 22, this was not accurate. In *UMG* the Court expressly premised its finding of infringement on the fact that "defendant is re-playing for the subscribers converted versions of the recordings it copied, without authorization, from plaintiffs' copyrighted CD's," *UMG*, 92 F.Supp.2d at 350. Thus, the question of whether there was *any* authorized basis for copying the recordings was at the heart of the decision in the *UMG* case.

A different issue was presented, however, with respect to defendant's settlement agreement with the Harry Fox Agency ("HFA") in October 2000 (*i.e.*, after the *UMG* lawsuit had already been resolved) because it included an unequivocal retroactive waiver of prior infringement, *viz.*, it provided that "any Copyrighted Works owned or controlled by the HFA–Releasors which were previously copied by MP3.com in connection with its My. MP3.com service shall be deemed to have been copied with each of the HFA–Releasor's respective consent." *See* Memorandum, Feb. 26, 2003. Thus, a defense based on this license and agreement was not barred by collateral estoppel, and indeed, was later upheld by this Court as a basis for partial summary judgment, *id.*

■ On the other hand, the Court was unpersuaded by defendant's contention in the instant litigation that plaintiffs were obligated to join all parties that defendant settled with under the Harry Fox agreement, as well as all co-owners of the com-

---

vice of counsel defense in *UMG*, it was already represented for all purposes in that litigation not only by the counsel thereafter accused of fraud but also by the very counsel that represented defendant in the instant litigation.

**2.** While the BMI license was not entered into until May 5, 2000 (*i.e.*, shortly after the *UMG*

motion practice on fair use), it was similar to the SESAC and ASCAP licenses in all respects here relevant. Having waived the argument that such a license with SESAC and ASCAP created the right to create server copies, defendant was therefore estopped from thereafter raising the argument with respect to the BMI license as well.

positions at issue in the suit. *See* transcript, Mar. 7, 2002, at 25–26 (defendant's defining the "indispensable parties" as including these two groups). As plaintiffs noted, it was defendant who was claiming indemnity based on the Harry Fox agreement and therefore, defendant, not plaintiffs, was the party that should have sought to join those parties.

More significantly, there was simply no legal basis for requiring plaintiffs to join all co-owners of the compositions at issue. Under the Rules of Civil Procedure, joinder is required when: (1) relief can not be accorded in the person's absence, or (2) "the person claims an interest relating to the subject of the action *and* is so situated that the disposition in the person's absence may (i) as a practical matter impair or impede the persons's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest." Fed.R.Civ.P. 19(a) (emphasis added). In this case, there was no assertion that complete relief could not be granted between the parties. *See Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 209 (2d Cir. 1985) ("[T]he term complete relief refers only to relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought.") (internal quotation marks omitted). Rather, defendant based its argument on the premise that it ran the risk of multiple liabilities. But if, as defendant argued, it might be obligated to pay 100% of statutory damages to plaintiffs, and the money was not divided among co-owners of the compositions, then the proper suit would be between these co-owners, not the co-owners against defendant. *See* Memorandum, Feb. 26, 2003, at 3 n.1.

Thus, for the forgoing reasons, the Court, by its telephone order of March 21, 2002, struck defendant's affirmative defenses of fair use, innocent intent, and advice of counsel with respect to the direct infringement claim, struck the affirmative defense of "express authority, license, or res judicata" to the extent predicated on the ASCAP, SESAC, and BMI licenses, struck in its entirety the affirmative defense of failure to join indispensable parties, and denied the motion in all other respects.