**COUNTRY ROAD MUSIC, INC., et al., Plaintiffs,**

v.

**MP3.COM, INC., Defendant.**

**No. 02 CIV. 8006(JSR).**

United States District Court, S.D. New York.

Aug. 27, 2003.

Michael Elkin, Esq., Sharon Carlstedt, and Thomas P. Lane, Thelen, Reid & Priest, L.L.P., New York, for Plaintiffs.

Jeffrey A. Conciatori, Esq., Magaret Caruso, Esq., Quinn Emanuel Urquhart Oli-

ver & Hedges, LLP, New York, for Defendants.

## MEMORANDUM ORDER

RAKOFF, District Judge.

This case, although just one more in the series of copyright infringement cases against MP3.com, presents its own nuances and challenges. Nevertheless, most of the pertinent legal issues have previously been evaluated, and decided, by the Court, and those prior rulings enable the Court to substantially narrow what remains here to be tried. Specifically, the Court hereby resolves the parties' respective pending motions for partial summary judgment as follows:

■ *First,* plaintiffs seek summary judgment that the defendant's activities of which plaintiffs here complain constituted willful copyright infringement, and, correlatively, that defendant's affirmative defenses of "fair use,"[1] "innocent intent,"[2] and "performing rights licenses,"[3] should be dismissed.[4] Plaintiffs seek these rulings both on the merits and on the ground that defendant is collaterally estopped by the Court's prior decisions from denying that it willfully infringed plaintiffs' musical composition copyrights when it created "server copies" of thousands of CDs in late 1999 and early 2000. *See UMG Recordings, Inc. v. MP3.com, Inc.,* 92 F.Supp.2d 349, 350 (S.D.N.Y.2000); *UMG Recordings, Inc. v. MP3.Com, Inc.,* No. 00 Civ. 472, 2000 WL 1262568, at *1 (S.D.N.Y. Sept.6, 2000); *see also Teevee Toons, Inc.*

*v. MP3.com, Inc.,* 134 F.Supp.2d 546, 546–47 (S.D.N.Y.2001) (*"TVT"*); *Zomba Enters., Inc. v. MP3.com, Inc.,* No. 00 Civ. 6833 (S.D.N.Y. Jun. 8, 2001).

In response, defendant attempts to distinguish this case from the Court's prior rulings by arguing that its licenses from the three major performing rights societies,[5] which explicitly give defendant the right to publicly "perform" musical compositions over the Internet, *see* Declaration of Deborah Ander, dated Apr. 4, 2003 ("Ander Decl."), Ex. 7 § 2(a) (BMI Agreement), Ex. 8 § 1 (SESAC Agreement), Ex. 9 at MP3–CR–00271 (ASCAP Agreement), included an implied (if not express) license to make such server copies, or rendered such reproductions a fair use given the express license to "perform" the compositions, or at least provided a basis for MP3.com's good faith belief that it was not infringing plaintiffs' musical compositions.

Collateral estoppel aside, however, defendant's argument is wholly without merit so far as the issue of infringement is concerned. "Performance" and "reproduction" are clearly and unambiguously separate rights under the Copyright Act of. 1976, *see* 17 U.S.C.A. § 106(1), (4) (West 1996 & Supp.2003); *Buffalo Broad. Co. v. A.S.C.A.P.,* 744 F.2d 917, 920 (2d Cir.1984); *cf. Agee v. Paramount Communications, Inc.,* 59 F.3d 317, 322–24 (2d Cir.1995). Here, the performing rights licenses themselves, as their name implies, explicitly authorize public performance only, do not purport to grant a reproduction right in musical compositions, and, in at least one

---

**1.** Defendant's Second Affirmative Defense.

**2.** Defendant's Third Affirmative Defense.

**3.** Defendant's Fourth Affirmative Defense.

**4.** Defendant has also consented to dismiss its Seventh Affirmative Defense of "failure to join indispensable parties." *See* Def.'s Memoran-

dum of Law in Opposition to Pls.' Motion for Partial Summary Judgment at 5 n. 7.

**5.** The American Society of Composers Authors and Publishers ("ASCAP"), Broadcast Music, Inc. ("BMI"), and SESAC, formerly known as the Society of European Stage Authors and Composers.

case, expressly disclaim such a grant.[6] Moreover, the performing rights societies themselves do not, and do not purport to have, the authority to grant such a right.[7]

It is true that in certain narrow circumstances courts have recognized an implied right of limited reproduction where an author physically conveys a work to the party that commissioned its creation. *See I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776–77 (7th Cir.1996); *Effects Assoc., Inc. v. Cohen*, 908 F.2d 555, 558–59 (9th Cir.1990). But this line of cases is inapposite here, where MP3.com neither commissioned nor received any works from plaintiffs themselves, and MP3.com obtained a license from parties who could not grant a reproduction right.

It is also doubtful whether, on the merits, defendant has raised a cognizable claim that such infringement was "innocent," or at least not willful, simply because the defendant allegedly believed that the performing rights licenses somehow conveyed a limited right of reproduction. *See* Deposition of Robin Richards, Declaration of Margaret Caruso, dated Apr. 22, 2003 ("Caruso Decl."), Ex. Y at 28–29, 153–54; Deposition of Michael Robertson, Caruso Decl. Ex. T at 17–18; Deposition of James Victor Rondinelli, Caruso Decl. Ex. S at 36–38. Such an unreasonable belief, to the extent it existed, reduces to a mistake of law. Defendants, knowing (as the Court has previously found), that their activities otherwise constituted willful infringement, cannot escape a finding of willfulness by reliance on their erroneous views of a legal "escape hatch" that does not exist and which itself rested on a reckless disregard for plaintiffs' clearly established legal rights.

■ But the Court need not rely on this determination, for, in any event, the doctrine of collateral estoppel bars MP3.com from re-litigating either its liability or its intent. In cases involving the same legal claims and the same underlying transactions, these identical two issues have been raised and resolved against defendant on multiple occasions, *see, e.g., TVT*, 134 F.Supp.2d at 546–47 (S.D.N.Y.2001) (granting plaintiffs' motion for summary judgment that MP3.com willfully infringed their musical compositions); *Zomba*, Order, Jun. 8, 2001 (same). Accordingly, "[i]f these performance right licenses granted, or were perceived by defendant as having granted, the implicit right to copy the com-

---

**6.** *See* BMI Agreement, Ander Decl. Ex. 7 § 2(d) ("This Agreement grants only public performing rights to licensee, and does not grant any reproduction, distribution, performance right in sound recordings or any other intellectual property right(s) in any musical compositions to any person or entity that may receive and/or download or otherwise store the transmission of musical works."); SESAC Agreement, Ander Decl. Ex. 8 § 2(D) ("This Agreement grants only public performance rights to licensee, and does not grant any reproduction, distribution or performance right in sound recordings or any other intellectual property right(s) in any musical compositions or sound recordings to licensee or any third party ...."); ASCAP Agreement, Ander Decl. Ex. 9 at MP3–CR–00271 (authorizing MP3.com "to perform copyrighted musical compositions in the ASCAP repertory via the Internet at the MP3.com web site, without limitation as to the nature or duration of such performances.").

**7.** *See* 17 U.S.C.A. § 101 (West Supp.2003) (defining a performing rights society as "an association ... that licenses the public performance of nondramatic musical works"); *see, e.g.,* Agreement Between Billy Joel and ASCAP, Declaration of Margaret Caruso, dated Apr. 22, 2003, Ex. I at BJ 519 (granting ASCAP "the right to license non-dramatic public performances"); Agreement Between Bob Dylan and SESAC, Caruso Decl. Ex. J at BD 14087 (granting SESAC "all of publisher's rights to perform publicly and to license others to perform publicly, publisher's works throughout the world").

positions onto the My.MP3.com server, that defense should therefore have been raised" in those earlier cases. *Copyright.net Music Publ'g LLC v. MP3.com, Inc.*, 256 F.Supp.2d 214, 217 (S.D.N.Y. 2003) ("*Copyright.net II* "); *see also Hickerson v. City of New York*, 146 F.3d 99, 108 n. 6 (2d Cir.1998).

■ Although it is true that in both *Zomba* and *TVT*, defendant made last-minute attempts to assert the licenses as a defense (attempts that were rebuffed as untimely, *see TVT* Tr., Mar. 27, 2001, at 204; *Zomba*, Tr., May 25, 2001, at 25–29; *Zomba*, Order, June 8, 2001), this does not aid defendant, for a party seeking to escape the estoppel effect of a prior action based on evidence not admitted during the first action "must not have been responsible in any way for the absence of the evidence from the initial trial," *Index Fund, Inc. v. Hagopian*, 677 F.Supp. 710, 717 (S.D.N.Y.1987); *accord Hickerson*, 146 F.3d at 108 n. 6; *Yamaha Corp. v. United States*, 961 F.2d 245, 257 (D.C.Cir.1992); 18 Moore's Federal Practice § 132.02[2][d] at 132–26 (3d ed.2000). Notwithstanding its excuses, MP3.com has failed to show that it could not have timely invoked the licenses in *TVT* and *Zomba*, and therefore the prerequisites of collateral estoppel are here met: *TVT* and *Zomba* involved the actual litigation of the identical issues involved here—MP3.com's liability for willful copyright infringement of musical compositions—which was resolved against MP3.com after a full and fair opportunity to litigate and as a necessary part of the Court's rulings.

Accordingly, both on the merits and as a matter of collateral estoppel, plaintiff is entitled to summary judgment as to defendant's liability for willful copyright infringement. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288–89 (2d Cir. 2002); *Tufamerica, Inc. v. Hammond*, No.

99 Civ. 10369, 2002 WL 1058059, at *5 (S.D.N.Y. May 23, 2002) ("Decisions on summary judgment are entitled to full preclusive effect.").

■ *Second,* defendant moves for summary judgment in its favor as to certain works allegedly co-owned by the Harry Fox Agency ("HFA"), contending that a settlement agreement between MP3.com and HFA granted defendant retroactive reproduction rights that bar any infringement claim by plaintiffs. The agreement, dated October 17, 2000, provides, in pertinent part:

> Effective upon the Effective Date, HFA, for and on behalf of the Settling HFA–Releasors, further agrees that any Copyrighted Works owned or controlled by the HFA–Releasors which were previously copied by MP3.com in connection with its My.MP3.com service shall be deemed to have been copied with each of the HFA–Releasor's respective consent.

*See* Declaration of Jeffrey A. Conciatori, dated Apr. 4, 2003 ("Conciatori Decl."), Ex. Q § 2.2. As the Court earlier held, the unambiguous language of this release creates a retroactive reproduction license that cures any past infringement by MP3.com of these works. *See Copyright.Net Music Publ'g LLC v. MP3.com, Inc.*, No. 01 Civ. 7321, 2003 WL 740757 (S.D.N.Y. Mar.4, 2003). Although plaintiffs advance various arguments for rejecting this conclusion, none is availing. Neither the absence of the word "license," nor extrinsic evidence, nor the custom and practice of the industry alters the unambiguous meaning of the above-quoted provision. Nor is it significant that the settlement agreement does not explicitly refer to non-signatory co-publishers, for "a license from a co-holder of a copyright immunizes the licensee from liability to the other co-holder for copyright infringement." *McKay v. Columbia*

*Broad. Sys., Inc.,* 324 F.2d 762, 763 (2d Cir.1963).

There remain, however, disputed issues of material fact as to which compositions were co-published by HFA (and thus retroactively licensed by the settlement agreement), *compare* Declaration of Karen Adams, dated Apr. 22, 2003, ¶¶ 5–22 & Exs. 2–5, 7–13 *and* Declaration of Debbie Sweeney, dated Apr. 22, 2003, ¶¶ 9–10 & Exs. 2–8 *with* Declaration of Scott T. Annett, dated Apr. 4, 2003, ¶¶ 8–9 & Ex. A *and* Declaration of Margaret Caruso, dated Apr. 28, 2003, Exs. A–D, and accordingly, this factual determination is deferred until trial.

*Third,* defendant has moved to strike the report of plaintiffs' expert, Barry M. Massarsky, to exclude his testimony, and to strike the claim for actual damages for lack of sufficient admissible evidence.

Massarsky, attempting to implement the "lost license" theory of actual damages outlined in *Davis v. The Gap, Inc.,* 246 F.3d 152 (2d Cir.2001), has submitted an expert opinion on the value of a license that would have permitted MP3.com to make server copies. *See* Declaration of Sharon Carlstedt, dated Apr. 22, 2003 ("Carlstedt Decl."), Ex. 2 ("Massarsky Report"). Massarsky takes as his starting point a January 2000 license between non-parties Musicmaker.com ("Musicmaker"), Jimmy Page, and the Black Crowes that allowed Musicmaker the exclusive, ten-year right "to manufacture, advertise, market, promote, distribute, and sell" nineteen sound recordings to the website's users, who could pay to download the recordings. Massarsky Report at 4 & n. 4, App. 6, Ex. V at P154. Massarsky divided the $2.5 million paid by Musicmaker by 19 and obtained a "per composition" fee of

$131,579. Massarsky Report at 18. Massarsky then multiplied that figure by 2.173, his estimate (based on a comparison of compositions sold per album) of how much more valuable plaintiffs' compositions were than the Black Crowes', and he divided the resulting figure by 2 (to account for the fact that the Musicmaker license was for sound recordings, whereas the reproduction at issue in this litigation concerned musical compositions). *Id.* The resulting figure, $142,961, is the amount that Massarsky estimates as the "fair and reasonable license fee" (per composition) that the parties to this case would have agreed to had they negotiated a license in Fall 1999.[8] *Id.* at 4, 18, 20.

An admissible expert opinion, whether based on scientific or other specialized knowledge, *see Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), must be both relevant, *i.e.,* probative of a factual issue, and reliable, *i.e.,* "based upon sufficient facts or data" and the product of reliable principles and methods that have been reliably applied to the facts of the case. Fed.R.Evid. 702; *Amorgianos v. Nat'l R.R. Passenger Corp.,* 303 F.3d 256, 265 (2d Cir.2002). Where an expert's opinion "is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached," *Amorgianos,* 303 F.3d at 266, or assumptions "that represent a complete break" with the evidence in the record, *Boucher v. U.S. Suzuki Motor Corp.,* 73 F.3d 18, 22 (2d Cir.1996), it should be excluded, and "nothing ... requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert," *General Elec. Co. v.*

---

8. Massarsky uses a similar methodology to calculate a hypothetical license of $46,052 for songs owned by plaintiffs but recorded by other artists ("covers"). Massarsky Report at 19.

*Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

■ Massarksy's exclusive reliance on a single license between non-parties for a use different from that made by MP3.com is unreliable. Although Massarsky attempts to account for the fact that Musicmaker licensed sound recordings from artists not involved in this case, he disregards other critical differences, such as the term of use (the Musicmaker license was for a ten-year term, while the My.MP3.com service lasted only about four months), exclusivity (nothing about MP3.com's infringement precluded plaintiffs from licensing the same compositions to others, while the Musicmaker license was exclusive), the breadth of the license (the Musicmaker license allowed more than the making of server copies), and the nature of the business (Musicmaker allowed users to download copies of the songs to their personal computers, while MP3.com permitted only those users who could prove ownership of CDs containing the compositions to listen to the songs stream over the Internet).

■ Massarsky indicates he was "not concerned about the actual history of the Defendant's actual use of the Plaintiffs' compositions" because the terms of the hypothetical license would have been settled before MP3.com began operations, and the plaintiffs would have insisted on a non-refundable advance. Massarsky Report at 4. But this mistakes the test laid out in *Davis.* In determining the license fee lost to the copyright owner because of the infringer's actions, "[t]he question is not what the owner would have charged," just as it is not relevant that the infringer might not have been willing to pay. *Davis,* 246 F.3d at 166, 172. The inquiry is an objective one into the "fair market value," the result of "negotiation between a willing buyer and a willing seller," *id.* at 172, for a license for "the use the infringer

made," *not* "the highest use for which plaintiff might license," *id.* at 166 & n. 5.

Therefore, instead of asking "what MP3.com would have had to pay to the [p]laintiffs as a license fee in order to obtain permission to use their compositions on the My.MP3.com service," Massarsky Report at 4, the proper inquiry was what price "a willing buyer and a willing seller" would have agreed on for the actual use made by the defendant, in this case, a four-month, non-exclusive license to stream previously released musical compositions over the Internet to users who could prove ownership of copies of those compositions.

Although Massarsky dismissed those differences for one reason or another, *see, e.g.,* Massarsky Deposition, Carlstedt Decl. Ex. 14 at 120–21, 153, other courts have recognized the error of beginning with a benchmark license for a use different from that made by the infringer. *See Trell v. Marlee Electronics Corp.,* 912 F.2d 1443, 1446–47 (Fed.Cir.1990) (" '[A] particular fee is not the correct measure of damages unless that which is provided ... to [the] licensees for that fee is commensurate with that which the defendant has appropriated.' "); *Baker v. Urban Outfitters, Inc.,* 254 F.Supp.2d 346, 354 (S.D.N.Y.2003) (rejecting expert testimony based on commissioned photography where defendant infringed a stock photograph); *Bi–Rite v. Button Master,* 578 F.Supp. 59, 60 (S.D.N.Y.1983) (declining to rely, for purposes of calculating a hypothetical license, on a one-year exclusive licenses where defendant's use was consistent with a non-exclusive license and lasted only six weeks). Here, where an expert has relied on a single, inapposite license, "there is simply too great an analytical gap between the data and the opinion proffered." *Joiner,* 522 U.S. at 146, 118 S.Ct. 512. Accordingly, Massarsky's expert opinion and tes-

timony based thereon are hereby excluded from evidence.

With Massarsky's expert report stricken, it is not clear what remains of plaintiffs' actual damages claim. The Court is not yet prepared to conclude, however, that there is no evidence in the record from which a reasonable jury could, without engaging in undue speculation, ascertain a fair market value for the use MP3.com made of the plaintiffs' compositions, and therefore the Court hereby denies the defendant's motion to strike plaintiffs' claim for actual damages without prejudice to its renewal as a motion *in limine* closer to trial.

■■■ *Fourth*, plaintiffs raise, apparently for purposes of any appeal, their disagreement with this Court's repeated prior rulings that statutory damages should be calculated on a "per-CD," and not a "per-composition," basis. *See TVT*, 134 F.Supp.2d at 548; *UMG Recordings, Inc. v. MP3.com, Inc.*, 109 F.Supp.2d 223 (S.D.N.Y.2000). But the Copyright Act unambiguously provides that a "compilation," although composed of "separate and independent works," 17 U.S.C.A. § 101 (West Supp.2003), "constitute[s] one work" for purposes of calculating statutory damages, 17 U.S.C.A. § 504(c)(1) (West Supp. 2003). Thus, each CD that defendant copied to its servers constitutes one work and the basis for one statutory damage award, even though it might contain multiple copyrighted musical compositions. *Cf. Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 285 (4th Cir.2003). Accordingly, as this Court has previously held, any statutory damages will be calculated on a per-CD basis.

■■■ *Fifth*, defendant seeks summary judgment dismissing plaintiff's claims as to six musical compositions that were only registered with the Copyright Office in March 2003, after the plaintiffs filed their Second Amended Complaint. *See* Conciatori Decl. ¶ 35 & Ex. CC (providing copyright registration certificates for "House Carpenter," "No More Auction Block," "Worried Blues," "Kingsport Town," "Moonshiner," and the copyright application for "Things Have Changed"). It is clear that the Court lacks subject matter jurisdiction over infringement claims concerning these belatedly registered compositions. *See* 17 U.S.C.A. § 411(a) (West Supp.2003); *Noble v. Town Sports Int'l, Inc.*, No. 96 Civ. 4257, 1998 WL 43127 (S.D.N.Y. Feb.2, 1998); *Nat'l Assoc. of Freelance Photographers v. Associated Press*, No. 97 Civ. 2267, 1997 WL 759456, at *12 (S.D.N.Y. Dec.10, 1997); *Conan Properties, Inc. v. Mattel, Inc.*, 601 F.Supp. 1179, 1182 (S.D.N.Y.1984). Although there is authority supporting plaintiffs' request for leave to file a Third Amended Complaint that would relate back to the commencement of the action, *see Stone v. Williams*, 970 F.2d 1043, 1050 (2d Cir.1992); *Historical Truth Prods., Inc. v. Sony Pictures Entm't, Inc.*, No. 93 Civ. 5529, 1995 WL 693189, at *6 (S.D.N.Y. Nov.22, 1995); *Campbell v. Nowlin*, No. 92 Civ. 4177, 1993 WL 205127, at *1–2 (S.D.N.Y. June 9, 1993); *Demetriades v. Kaufmann*, 680 F.Supp. 658, 661 (S.D.N.Y. 1988), more pertinent authority suggests that such a generous policy is not appropriate where, as here, plaintiff attempted to correct the jurisdictional defect only after the three-year statute of limitations had elapsed, *see Brewer–Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1285 (11th Cir.2000); *CACI Int'l, Inc. v. Pentagen Technologies Int'l, Ltd.*, No. 93 Civ. 1631, 1994 WL 1752376, at *3 (E.D.Va. June 16, 1994); 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.05[D] (2000); *cf. Computer Associates Int'l, Inc. v. Altai, Inc.*, 775 F.Supp. 544, 557 (E.D.N.Y.1991), *vacated in part*

*on other grounds* 982 F.2d 693 (2d Cir. 1992). Moreover, plaintiffs have offered no reason for their undue delay in waiting until after defendant moved for summary judgment to seek leave to amend, thereby prejudicing defendant in preparation for the upcoming trial. Accordingly plaintiffs' request is denied, *see Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002), and defendant's motion for summary judgment as to those six compositions is granted.

*Sixth,* both plaintiffs and defendant seek evidentiary rulings relating to the admissibility or inadmissibility of certain items of evidence relating to statutory damages. These are more appropriately deferred to trial or, at earliest, to motion *in limine* practice in accordance with the Court's Individual Rules. Accordingly, the pending motions relating to those items are denied.

In sum, plaintiffs' motion for partial summary judgment on the issues of infringement and willfulness is granted; defendant's Second, Third, Fourth, and Seventh Affirmative Defenses are dismissed; defendant's motion for summary judgment on any compositions that were co-published by HFA is granted; defendant's motion to strike the expert report and testimony of Barry Massarsky is granted; defendant's motion to dismiss plaintiffs' claim for actual damages is denied; any statutory damages will be calculated on a per-CD basis; defendants's motion for summary judgment as to six works not registered at the time the Second Amended Complaint was filed is granted; and the balance of the parties' motions is denied.

SO ORDERED.